UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CAROLINA CARRASQEURO,

    Plaintiff,

v().    Case No.

VOYA INSTITUTIONAL PLAN SERVICES, LLC,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

1. This is a suit for damages and injunctive relief under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e et seq.,

### JURISDICTION

2. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and (4) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq.

### PARTIES

3. Plaintiff is a female, was born in Venezuela and is a Venezuela-American and a resident of Duval County, Florida.

4. Defendant, Voya Institutional Plan Services, LLC, ("VIPS") is a foreign corporation licensed to do business in the State of Florida, doing business in Duval County, Florida, and at all times material to this Complaint has employed more than 15 persons, and was Plaintiff's "employer" under Title VII.

## CONDITIONS PRECEDENT

5. All conditions preceding to bringing a civil action under 42 U.S.C. § 2000e-(f)(1) have occurred or been complied with, to wit: a charge of discrimination was timely filed with the Equal Employment Opportunity Commission; a notification of Right to Sue was received from the Equal Employment Opportunity Commission, the complaint in this case was filed within ninety (90) days of the receipt of the notification of Right to Sue. All conditions precedent have been complied with and this lawsuit is timely filed.

## STATEMENT OF FACTS

6. Plaintiff was employed by Defendant from on or about December 5, 2016, until she was discharged on June 29, 2017. During her employment, Carolina Carrasquero held the position of Bilingual Customer Contact Center Manager. After her termination Plaintiff changed her last name from Entzminger to Carrasquero.

7. According to her offer letter and Defendant's company policies, Ms. Carrasquero was required to obtain a Series 6 license within two (2) months of her start date and required to obtain a Series 26 with six (6) months from her start date. Company policies and the offer letter also provide that a failure to obtain registration within this timeframe may result in transfer to a position not requiring registration, or termination of employment. The offer and Company policy provides that transfer to another position within the Company is not guaranteed.

8. Passing the Series 6 exam is a prerequisite to sit for the Series 26 exam. Both exams are overseen by the Financial Industry Regulatory Authority (FINRA). The Series 6 exam contains 100 multiple choice questions, which a candidate is given 135 minutes to take with a requirement of scoring 70% or higher in order to pass. According to FINRA, the exam measures the degree to which each candidate possess the knowledge needed to perform the critical functions of the

investment company in variable contract products representative, including sales of mutual funds and variable annuities. It is well known that it takes a large amount of preparation to have a reasonable chance at passing the Series 6 FINRA exam.

9. The Series 26 exam contains 110 multiple choice questions which a candidate is given 165 minutes to complete, which also has a minimum passing score of 70%. Series 26 exam is considered to be more difficult than the Series 6 exam, and as such would require an equal or greater amount of preparation in order to have a reasonable chance of success.

10. Plaintiff agrees that VIPS can set its own policy for how quickly it requires its employees to obtain a Series 6 and 26. This case is about the unequal treatment of employees in granting extensions. There were at least two instances where Defendant deviated from the deadlines associated with passing the Series 6 and Series 26 exam for similarly situated employees outside of one of more of Plaintiff's protected classes. This is disparate treatment evidence which squarely rebuts the reasons VIPS provided for Plaintiff's termination. VIPS acknowledged in response to Plaintiff's charge of discrimination that its sole reason for terminating Plaintiff was her failure to obtain the licenses required for her position within the time period VIPS provided her to do so.

11. Plaintiff took the Series 6 exam initially on January 25, 2017 and came within four (4) points of passing the exam. On May 3, 2017, she retook the examination and passed.

12. Thereafter, around May 17, 2017, a newly hired Vice President asked Ms. Carrasquero if she was ready to take the Series 26 exam by June 5, 2017. In this conversation, she explained that she could schedule the exam but did not feel confident in passing as she had not had sufficient time to prepare for the Series 26 examination. Ms. Carrasquero also explained that she was aware that another manager, Mark Sopata, recently had a celebration in the office for him

passing the Series 26 exam in February 2017, which she later learned to be his eleventh (11th) month of employment, as his one year anniversary was then celebrated in March 2017. In Ms. Carrasquero's conversation with Vice President Diana Ireland, Ms. Ireland made note of this precedent-setting exception, but then stated, "we didn't have this conversation," and she would find out what, if anything, could be done.

13. A few days later, this same VP informed Ms. Carrasquero that she was required to schedule the test and provided a three week extension beyond the six month deadline. Plaintiff scheduled the Series 26 exam for June 28, 2017. On June 28, 2017, Ms. Carrasquero came within six (6) points of passing the Series 26 exam. There was no other mention by anyone in senior management that she would not be given additional attempts to pass the Series 26 exam.

14. Previously, on April 10, 2017, Vice President Kelly Curfman had informed Ms. Carrasquero that he did not find it advisable for her to move my Series 6 test date from April 10 to May 3, 2017. However, by that time, Ms. Carrasquero had already made these arrangements and would have incurred additional costs to change the test date for the Series 6 exam. Plaintiff would have incurred a fee for re-scheduling the exam which would not have reimbursed by Defendant. Mr. Curfman was concerned that Ms. Carrasquero would not have enough time to study to take the Series 26 exam prior to the June 5th deadline for passage of both 6 and 26, which was specified in her offer letter.  Ms. Carrasquero expressed a need to have additional time and changing the date of the Series 6 exam would cost her a fee that was not reimbursable. Ms. Carrasquero expressed a need to have additional time and changing the date of the Series 6 exam would cost her a fee that was not reimbursable. Defendant tried to obfuscate this fact in its response to Plaintiff's charge but they ultimately appear to have acknowledged that Plaintiff would not have been reimbursed for the fee associated with re-scheduling the exam. Further, if Defendant was

willing to pay for a cancelled test and another test it stands to reason it would have stated that to Plaintiff – it did not.

15. Ms. Carrasquero had little to no support from her Vice President during the period from February to June 2017 when she took over the team and was preparing for her exams. Kelly Curfman was a substandard manager who provided little support. As a result Plaintiff was on her own prepping for the test and managing her team.

16. Plaintiff dedicated most of her time to learning systems and managing a team who felt very frustrated by the lack of support. Prior to Plaintiff's appointment to the Bilingual Customer Contact Center Manager position, the bilingual team has not had a manager for many months. The employees had been managed by monolingual managers who could not perform quality-control checks or respond to escalated matters without the assistance of translation. Plaintiff studied diligently after work and during her lunch for both exams.

17. Whether or not Plaintiff should have scheduled the test earlier is irrelevant as it was not the reason she was terminated. Plaintiff firmly denies the allegation that she was dragging her feet. She clearly indicated that she felt that she was not prepared for the exam at the time due to her focus on providing the team the support they needed. Plaintiff was working to learn systems and sought out help to learn the numerous disjointed systems. There was no new manager support. As the only bilingual manager, there were duties only she could do, such as translations and monitoring bilingual calls. Lastly, Plaintiff supported her team through a transition to a new phone system which was riddled with errors in both the English and Spanish queues. In short, Plaintiff had more issues to deal with than other non-bilingual managers. In addition to that, Plaintiff studied for the tests and took the online practice. Plaintiff did not ignore Ms. Curfman's concerns. She didn't feel confident in her practice scores so she paid to change her test date to guarantee success.

Ultimately, Ms. Carrasquero did pass the Series 6 exam on her second attempt.

18. On June 29, 2017, Ms. Carrasquero spoke with Mark Sopata, who informed her that his offer letter stated that he would have to pass both the 6 and 26 within six (6) months from the start date from his employment, the same time she was provided. However, Ms. Carrasquero learned directly from Mr. Sopata that he did not take the Series 26 exam until his 11th month of employment. Mr. Sopata was obviously not terminated when he failed to acquire his Series 26 Certification within six months of his start date. Further, Mr. Sopata reassured her during their June 29, 2017 conversation that she would get another chance to take the Series 26 exam. Although Mr. Sopata was not her supervisor, he was a similarly situated manager who Ms. Carrasquero believed was subjected to more favorable treatment than her for reasons which constitutes discrimination.

19. The same day, June 29, 2017, subsequent to these conversations, Ms. Carrasquero was led to a room in the HR area where Ms. Ireland informed her that since she had not passed the Series 26 exam, the Company was going to let her go. Both the HR official and Ms. Ireland informed Ms. Carrasquero that her termination was purely due to licensing. However, as she had informed the Ms. Ireland, other employees who held a substantially similar position, who had the same deadlines and license requirements, were allowed time outside the six (6) month window to pass these exams as well as being provided multiple chances to take and pass the Series 26 exam.

20. Plaintiff was provided a total of six (6) months and three (3) weeks to pass the Series 6 and 26. Mr. Sopata received eleven (11) months. Mr. Sopata received a five (5) month extension where Plaintiff received a three week extension. Defendant has admitted this fact. Defendant has presented no evidence to explain the more favorable treatment provided to Mr. Sopata who is white and male.

21. Mr. Adam Pantoja received two chances to pass the Series 26 exam. Mr. Pantoja was also provided a longer extension than Plaintiff. Defendant acknowledged that Mr. Pantoja received an extension which was two less months than provided to Mr. Sopata. Therefore, it is evident from Defendant's admissions that Mr. Pantoja got a three (3) month extension, or nine (9) total months to pass the Series 26 exam. Defendant admitted Mr. Pantoja also was provided two opportunities to pass the Series 26 exam. By comparison Plaintiff was provided only a three week extension and one chance to pass the Series 26 exam.

22. In summary, two male employees subject to the exact same licensure requirement were not discharge 6 months and 3 weeks after they failed to obtain a Series 26 license. One was provided 9 months and at least two chances to pass the Series 26 and another was provided 11 months to pass the Series 26. Each was supervised by the same individual(s) who supervised Plaintiff during her employment with Defendant and were subject to the same licensure requirements and deadlines imposed by Defendant.

23. Plaintiff's sex and national origin were a motivating factor in Defendant's decision to terminate her employment. The reason articulated by Defendant for Plaintiff's termination is merely a pretext for sex and national origin discrimination Moreover, this decision would not have been made but for these unlawful motives or a combination of these unlawful factors and the Defendants' articulated reasons are pretextual.

## COUNT I

### DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C. 2000 ET SEQ.

24. Plaintiff hereby restates and realleges each and every factual allegation contained in Paragraphs 1 through 23.

25. Plaintiff's sex was a motivating factor in Defendant's decision to terminate her employment. Plaintiff would not have been terminated but for her sex. The reason Defendant articulates for the termination is pretextual.

26. The above described discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a result, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, injunctive relief and reinstatement, prejudgement interest, attorney's fees and costs, punitive damages, and any other such relief that the Court deems appropriate.

## COUNT II

### UNLAWFUL DISCRIMINATION BASED ON NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C. §2000e *ET SEQ*.

27. Plaintiff hereby restates and realleges each and every factual allegation contained Paragraphs 1 through 20 and 23.

28. Plaintiff's national origin was a motivating factor in Defendant's decision terminate Plaintiff.

29. Defendant's course of conduct described above was willful, malicious and with a reckless disregard of Plaintiff's rights under federal law. As a result of said discrimination, the Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a trial by jury on issues so triable, and relief in the form of economic damages, lost wages, backpay and frontpay, compensatory and emotional distress damages, prejudgment interest, attorneys' fees and costs with interest thereon, equitable relief, and any other such relief that the Court deems just and proper.

## COUNT III

### DISCRIMINATION BASED ON SEX AND NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C. 2000 ET SEQ.

30. Plaintiff hereby restates and realleges each and every factual allegation contained in Paragraphs 1 through 23.

31. Plaintiff's national and sex were motivating factors with regard to Defendant's termination of Plaintiff. Moreover, this decision would not have been made but for a combination of these unlawful factors and the Defendant's articulated reasons are pretextual.

32. The above described discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a result, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, injunctive relief and reinstatement, prejudgement interest, attorney's fees and costs, punitive damages, and any other such relief that the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Samuel B. Kanupp,
ARCHIBALD J. THOMAS, III, P.A.
Suite 255, Quadrant I
4651 Salisbury Road
Jacksonville, FL 32256
(904) 674-2222 (Telephone)
(904) 296-2341 (Facsimile)
Archibald J. Thomas, III
Florida Bar No. 231657
thomas@job-rights.com
Samuel B. Kanupp
Florida Bar No. 0067216

samuel@job-rights.com

Attorneys for Plaintiff